BRYAN, Judge.
Tracy Lynn Mullins (“the father”) appeals from a judgment entered by the Madison Circuit Court (“the trial court”) *818 that found him in contempt for failure to pay child support, ordered him to pay his child-support arrearage, and sentenced him to serve 700 days in jail for 140 separate acts of contempt, with all but 5 days of that term suspended.
The father and Lisa Christine Sellers (“the mother”) were divorced by the trial court in September 1995. Two children were born of the parties’ marriage, a boy born in September 1985 (“the older child”) and a boy born in August 1990 (“the younger child”) (hereinafter the older child and the younger child are referred to collectively as “the children”). Pursuant to the divorce judgment, the mother was awarded physical custody of the children and the father was ordered to pay child support. On or about May 25, 2001, the parties entered into an agreement modifying the divorce judgment so that the father was awarded custody of the older child and neither party was responsible for the payment of child support; that agreement was incorporated into a judgment of the trial court (“the May 2001 modification judgment”). The May 2001 modification judgment included a provision that the father would not be responsible for any past or future dental expenses of the children arising from a genetic disorder that the children had.
The divorce judgment was modified again on August 30, 2001 (“the August 2001 modification judgment”), and, pursuant to that modification judgment, the mother was awarded custody of the older child and the father was ordered to pay $451.08 a month in child support, beginning on August 13, 2001. The father was ordered to make the child-support payments on the 15th day of each month through the clerk of the trial court. The parties were also ordered to equally share the cost of the children’s “health care services which are not covered by insurance ... including bills for doctors, hospitals, prescription drugs, orthodontic, dental, and optometric expenses.”
On June 13, 2008, the mother filed a petition for a rule nisi alleging that the father had failed to pay court-ordered child support from August 13, 2001, until the day she filed her petition, and she requested that the father be ordered to pay the child-support arrearage due with interest.[1] The mother also requested an award of her attorney’s fees. The father filed an answer to the mother’s petition for a rule nisi, and he denied all the allegations made by the mother.
The trial court conducted an ore tenus hearing on October 21 and 22, 2009. The mother and the father both testified that the father had paid his child-support obligation as ordered in the August 2001 modification judgment from August 2001 through May 2002. It was also undisputed that the father had not made a single child-support payment through the clerk of the trial court from June 2002 through the date of the final hearing in October 2009.
The evidence revealed that both the older child and the younger child had lived, at times, with the father despite the fact that the mother had had physical custody of the children. According to the mother, the older child had lived with the father from June 2002 through December 2002. However, according to the father, the older child had lived with him from June 2002 through May 2004. The mother testified that the father had stopped paying child support after the older child moved into the father’s home. According to the fa *819 ther, he and the mother had agreed in June 2002 that the father no longer had to pay child support because the older child was living with him and the younger child was living with the mother. The mother denied that the parties had reached such an agreement. The father stated that he began paying child support directly to the mother after the older child turned 19 years old in September 2004.
Tina Mertz, the father’s sister, testified that she was present when the mother and the father reached an agreement in May 2002 that the father would not owe child support to the mother because the older child was going to live with the father. The mother testified that she agreed in June 2002 that, as long as the older child was in high school and was living with the father and the younger child was living with her, she would not require the father to pay child support. The mother stated that she expected the father to resume paying child support in December 2002, after the older child graduated from high school.
The father testified that when the older child lived with him he provided the older child’s housing, utilities, cable television, food, clothing, vehicle, car insurance, gasoline, and vehicle maintenance and paid for the older child’s extracurricular activities. The father stated that, even though he and the mother had reached an agreement that he did not have to pay child support while the older child was living with him, he had paid the mother child support during that time. The older child graduated from high school in December 2002, and the mother testified that she had supported the older child while he was in high school and after he graduated from high school by purchasing clothing for the older child and by giving him money.
According to the mother, the younger child moved in with the father in October 2008, but the father testified that the younger child had begun living with him in June 2008. The father testified that, when younger child lived with him, he paid for the younger child’s housing, utilities, Internet service, vehicle, vehicle maintenance, clothing, and food. The father testified that he only gave the mother child support when she asked for it.
The mother submitted an exhibit that calculated the father’s child-support obligation from June 13, 2002, until July 13, 2009, which was the month before the younger child turned 19; according to the mother, the father’s child-support arrear-age for that period totaled $42,942.12, including interest. However, the mother testified that, because the younger child had gone to live with the father in October 2008, she was not seeking child support from the father that would have been due after October 2008. The mother submitted an exhibit that calculated the father’s child-support arrearage, including interest, due from June 2002 through October 2008. According to the mother’s calculations, the father owed $38,343.20 in child support for that period.
The father was responsible for payment of one-half of the medical and dental expenses of the children, and the mother testified that the father had given her money, in the form of checks, to cover his one-half of the medical expenses of the children. The mother testified that the younger child had several medical conditions, including a genetic disorder, and that she had incurred approximately $8,000 in medical bills for the younger child in 2008. The father alleged that he did not have to pay for the medical treatment of the younger child insofar as it arose from his genetic disorder, pursuant to the May 2001 modification judgment. However, he admitted that he did have to *820 pay half of the children’s regular dental costs.
The mother stated that the father had provided some child support directly to her and that she was willing to allow the father’s child-support arrearage to be credited to reflect the payments that the father had made directly to her. The father submitted an exhibit into evidence that contained copies of approximately 19 canceled cheeks payable to the mother between March 2004 and January 2009, which totaled $11,614.73. The father admitted that approximately $414.73 from those payments was to reimburse the mother for payment of the younger child’s medical expenses. The father also submitted an exhibit into evidence that contained check stubs that purported to show that he had paid the mother approximately $3,600 from July 2004 through July 2006. The mother further admitted that the father had paid her $600 in October 2007. The father also estimated that he had paid the mother approximately $2,500 in child support between June 2002 and March 2004 that he could not support with evidence from his check register or with canceled checks. The mother testified that at least $3,364.73 that the father had given her in 2008 was for payment of one-half of the younger child’s medical expenses for which the father was responsible.[2] The mother also testified that approximately 80% of the money that the father had provided to her was for payment of his half of the children’s medical expenses. The father claimed that the checks he had given to the mother were for child support and not for medical expenses.
The father owned his own plumbing business, which was incorporated in 2006. The father’s income-tax records demonstrated that his gross income was $40,801 in 2002, $15,304 in 2003, $13,612 in 2004, $47,327 in 2006, $97,187 in 2007, and $153,348 in 2008.[3] The father stated that he did not have the ability to pay child support on a regular basis before 2006, but he admitted that he had had the ability to pay child support for the three years before the ore tenus hearing.
On November 9, 2009, the trial court entered a final judgment, which stated, in pertinent part:
“3. The evidence reveals that the [father] never paid any child support payments through the Office of the Clerk of Court even though required to do so by the Divorce Decree as amended.
“4. The evidence further reveals that, even when prior custody orders of the court vested the [mother] with the primary custody of one or both children at specific intervals, both of the children during their minority lived by agreement with the [father] from time to time and the [father] claims a credit should be afforded to him against any child support that the Court determines to be due and owing.
“5. As a result, for the period of time of August 1, 2001 through August, 2009, the Court finds that the sum of $38,343.20 as child support would be due and owing pursuant to the Deoree of Divorce, as amended, from the [father] to the [mother], but the Court also finds that a credit of $19,000.00 should be awarded to the [father] for support furnished by him for the periods of time when the children were living with him and he was furnishing virtually all of their support. Due to the haphazard *821 payments made by the [father] to the [mother], none of which were through the Clerk’s office, the Court credits the [father] with $19,000.00 worth of child support towards the arrearage mentioned above, leaving a balance due and owing to the [mother] of $19,343.20.
“WHEREFORE, premises considered, the Court ORDERS as follows:
“A. That the [father] has committed numerous acts of contempt; specifically, he has never paid child support through the Office of the Clerk of Court as required since the entry of the Amended Order on August 1, 2001, for a total of ninety-seven (97) separate acts of contempt.
“B. That the [father] is delinquent in the amount of child support in the amount of NINETEEN THOUSAND, THREE HUNDRED FORTY-THREE AND 20/100 ($19,343.20) DOLLARS for which a Judgment is entered in favor of the [mother] against the [father] and for which the [father] shall make minimum monthly payments of at least FIVE HUNDRED AND 00/100 ($500.00) DOLLARS per month on the first day of each month following, commencing December 1, 2009. Further, the Court finds that the [father] committed at least forty-three (43) separate acts of contempt by willfully and intentionally failing to pay child support to the [mother] during periods of time when he had the financial means to do so.
“C. The Court finds from the foregoing that the [father] has committed one hundred forty (140) numbers of incidents of contempt for each of which he is hereby sentenced to the Madison County Jail for a period of five (5) days or a total of seven hundred (700) days. All but five (5) days of this sentence shall be suspended and the [father] shall be placed on unsupervised probation pending further compliance by the [father] of all other provisions of this or any prior orders entered in this cause....
“D. The [mother] is awarded a reasonable attorney’s fee in the amount of FIVE THOUSAND AND 00/100 ($5,000.00) DOLLARS for the services of her attorney in this action and for which a judgment is entered in favor of the [mother] against the [father] for which execution may issue.”
The father filed a timely notice of appeal to this court, and the trial court entered a stay of execution of its November 2009 judgment pending resolution of the father’s appeal to this court.
The father raises several issues on appeal: (1) whether the trial court erred by finding him guilty of contempt on 10 occasions between August 1, 2001, and May 2002; (2) whether the trial court erred by finding him guilty of contempt on 11 occasions between October 2008 and August 2009; (3) whether the trial court erred by failing to give him credit for payments he made directly to the mother; (4) whether the trial court erred by finding him guilty of contempt when there was no evidence indicating that he had acted willfully in his failure to pay child support through the clerk of the trial court; (5) whether the trial court erred by finding him guilty of 43 separate acts of contempt; (6) whether the trial court erred by finding him guilty of contempt during periods of time that the father provided all the support for the children; (7) whether the trial court erred by finding that he had committed willful acts of contempt by making direct payments to the mother; (8) whether the trial court erred in calculating the arrearage awarded to the mother; (9) whether the trial court erred by awarding the mother attorney’s fees following a criminal-contempt action; and (10) whether the trial *822 court exceeded its discretion by sentencing the father to 700 days in jail, with all but 5 days of that term suspended.
In response to the father’s arguments on appeal, the mother argues that the issues argued by the father should not be considered by this court because the father failed to comply with Rule 28, Ala. R.App. P. Indeed, the father’s brief on appeal does not contain a statement of facts or a statement regarding the applicable standard of review, and, as the mother points out, several of the arguments made by the father on appeal are not supported by citation to authority. See Rule 28(a)(7), (8), and (10), Ala. R.App. P. Although the father’s brief is not a model of clarity, we are able to ascertain most of the father’s arguments on appeal, and, thus, we will not dismiss the father’s appeal on the basis of his failure to comply with Rule 28. See Du-bose v. Dubose, 964 So.2d 42, 46 n. 5 (Ala.Civ.App.2007) (when an appellant’s brief fails to comply with Rule 28, this court may affirm the judgment on the basis of the failure to comply with Rule 28, but we are not required to do so).
However, we will not address the issues raised by the father on appeal at this time because we detect inconsistencies in the judgment that hinder our ability to fully address each of the issues raised by the father on appeal. Thus, in this particular case, we find that the best course is to reverse the judgment and remand the cause with instructions to the trial court to clarify its judgment and address the discrepancies in the judgment discussed below.
In paragraph A of the trial court’s final judgment, the trial court found that the father had committed 97 separate acts of contempt because of his failure to pay child support through the trial-court clerk’s office after August 1, 2001. The period between August 2001 and August 2009 consists of 97 months. Thus, the trial court’s finding in paragraph A implies that the trial court found that the father had willfully failed to obey prior orders of the trial court ordering him to pay child support in each month from August 2001 through August 2009.[4] The trial court, in its final judgment, determined that the total arrearage that accumulated during that time was $38,343.20. However, our calculations reveal that the father’s child-support arrearage, accruing over a period of 97 months, would have totaled $43,754.76, plus interest. The amount of the total arrearage owed by the father, as determined by the trial court, implies that the trial court agreed with the mother’s assertion that she was owed child support with interest from June 2002 through August 2009.[5] However, that finding is in conflict with the trial court’s finding that the father willfully failed to pay child support for 97 months between August 2001 and August 2009. The discrepancy in the number of acts of contempt and the amount of the accumulated arrearage could not be due to the credit that the trial court applied to the father’s arrearage because the trial court deducted all credits that the father was due to receive from the *823 total amount of the accrued arrearage that it found, i.e., $38,343.20.
Furthermore, the judgment states that the amount of the father’s child-support arrearage, or $38,343.20, is due to be reduced by a $19,000 credit for support that the father periodically provided to the children while the children lived with the father. The final judgment implies that the trial court did not give the father credit for support payments that he allegedly made directly to the mother. Because our understanding of the judgment is that the trial court did not credit the father with payments that he made directly to the mother, we are unable to discern how the trial court determined the amount of credit that the father was due. Because we are unable to determine from the record on appeal how the trial court arrived at its child-support-arrearage award, we reverse the judgment and remand the cause for further proceedings. See Hildesheim v. Velaski, 769 So.2d 920, 923 (Ala.Civ.App.1999) (reversing judgment and remanding for recalculation of child-support arrearage when we were unable, after a review of the evidence, to determine “how the trial court reached its total when it calculated the arrearage”).
Finally, in Paragraph B of the trial court’s judgment, the trial court found that the father was guilty of 43 separate acts of contempt, in addition to the 97 acts of contempt referred to in paragraph A, for willfully and intentionally failing to pay child support to the mother during periods of time when the father had the financial ability to do so. The judgment does not explain how the father committed 43 separate acts of contempt in addition to the 97 acts of contempt that the father had been found guilty of committing between August 2001 and August 2009. Because we are unable to determine how the trial court reached this conclusion in its judgment, we instruct the trial court to clarify this portion of its judgment on remand.
For the foregoing reasons, we reverse the judgment and remand the cause to the trial court with instructions for the trial court to consider the evidence already presented by the parties and to clarify its final judgment. We pretermit discussion of the remaining issues raised by the father on appeal.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The mother also requested an upward modification of the father's child-support obligation. However, the trial court subsequently granted the mother’s motion to dismiss that part of her petition.

. The copies of canceled checks submitted by the father demonstrated that in 2008 the father had written checks payable to the mother in the amount of $4,914.73.

. The father's income records for the year 2005 were not presented at the final hearing.

. We note that, based on the trial court’s judgment, the trial court apparently did not consider the undisputed testimony from the mother and the father that the father had paid child support through the trial-court clerk’s office from August 2001 through May 2002.

. The trial court’s finding of the total accrued arrearage matches exactly the amount of child support and interest that the mother testified that she was due. However, the mother’s calculations were based on nonpayment of child support from June 2002 through October 2008, and the trial court's judgment concludes that die father had not paid child support from August 2001 through August 2009.