BRYAN, Judge.
This is the second time these parties, Tracy Lynn Mullins (“the father”) and Lisa Christine Sellers (“the mother”), have been before this court. In Mullins v. Sellers, 58 So.3d 817 (Ala.Civ.App.2010), the father appealed from a judgment of the Madison Circuit Court (“the trial court”) that found him guilty of 140 separate acts of contempt and assessed a child-support arrearage. This court reversed that judgment and “remand[ed] the cause with instructions to the trial court to clarify its judgment and address [certain] discrepancies in the judgment,” as discussed in the opinion. Id. at 822. The father now appeals from the judgment entered by the trial court on remand.
We set forth the pertinent facts and procedural history in Mullins, supra, as follows:
“The father and [the mother] were divorced by the trial court in September 1995. Two children were born of the parties’ marriage, a boy born in September 1985 (‘the older child’) and a boy born in August 1990 (‘the younger child’) (hereinafter the older child and the younger child are referred to collectively as ‘the children’). Pursuant to the divorce judgment, the mother was awarded physical custody of the children and the father was ordered to pay child sup *938 port. On or about May 25, 2001, the parties entered into an agreement modifying the divorce judgment so that the father was awarded custody of the older child and neither party was responsible for the payment of child support; that agreement was incorporated into a judgment of the trial court (‘the May 2001 modification judgment’). The May 2001 modification judgment included a provision that the father would not be responsible for any past or future dental expenses of the children arising from a genetic disorder that the children had.
“The divorce judgment was modified again on August 30, 2001 (‘the August 2001 modification judgment’), and, pursuant to that modification judgment, the mother was awarded custody of the older child and the father was ordered to pay $451.08 a month in child support, beginning on August 13, 2001. The father was ordered to make the child-support payments on the 15th day of each month through the clerk of the trial court. The parties were also ordered to equally share the cost of the children’s ‘health care services which are not covered by insurance ... including bills for doctors, hospitals, prescription drugs, orthodontic, dental, and optometric expenses.’
“On June 13, 2008, the mother filed a petition for a rule nisi alleging that the father had failed to pay court-ordered child support from August 13, 2001, until the day she filed her petition, and she requested that the father be ordered to pay the child-support arrearage due with interest. The mother also requested an award of her attorney’s fees. The father filed an answer to the mother’s petition for a rule nisi, and he denied all the allegations made by the mother.
“The trial court conducted an ore ten-us hearing on October 21 and 22, 2009. The mother and the father both testified that the father had paid his child-support obligation as ordered in the August 2001 modification judgment from August 2001 through May 2002. It was also undisputed that the father had not made a single child-support payment through the clerk of the trial court from June 2002 through the date of the final hearing in October 2009.
“The evidence revealed that both the older child and the younger child had lived, at times, with the father despite the fact that the mother had had physical custody of the children. According to the mother, the older child had lived with the father from June 2002 through December 2002. However, according to the father, the older child had lived with him from June 2002 through May 2004. The mother testified that the father had stopped paying child support after the older child moved into the father’s home. According to the father, he and the mother had agreed in June 2002 that the father no longer had to pay child support because the older child was living with him and the younger child was living with the mother. The mother denied that the parties had reached such an agreement. The father stated that he began paying child support directly to the mother after the older child turned 19 years old in September 2004.
“Tina Mertz, the father’s sister, testified that she was present when the mother and the father reached an agreement in May 2002 that the father would not owe child support to the mother because the older child was going to live with the father. The mother testified that she agreed in June 2002 that, as long as the older child was in high school and was living with the father and the younger child was living with her, she would not require the father to pay child support. The mother stated that she *939 expected the father to resume paying child support in December 2002, after the older child graduated from high school.
“The father testified that when the older child lived with him he provided the older child’s housing, utilities, cable television, food, clothing, vehicle, car insurance, gasoline, and vehicle maintenance and paid for the older child’s extracurricular activities. The father stated that, even though he and the mother had reached an agreement that he did not have to pay child support while the older child was living with him, he had paid the mother child support during that time. The older child graduated from high school in December 2002, and the mother testified that she had supported the older child while he was in high school and after he graduated from high school by purchasing clothing for the older child and by giving him money.
“According to the mother, the younger child moved in with the father in October 2008, but the father testified that the younger child had begun living with him in June 2008. The father testified that, when younger child lived with him, he paid for the younger child’s housing, utilities, Internet service, vehicle, vehicle maintenance, clothing, and food. The father testified that he only gave the mother child support when she asked for it.
“The mother submitted an exhibit that calculated the father’s child-support obligation from June 13, 2002, until July 13, 2009, which was the month before the younger child turned 19; according to the mother, the father’s child-support arrearage for that period totaled $42,942.12, including interest. However, the mother testified that, because the younger child had gone to live with the father in October 2008, she was not seeking child support from the father that would have been due after October 2008. The mother submitted an exhibit that calculated the father’s child-support arrearage, including interest, due from June 2002 through October 2008. According to the mother’s calculations, the father owed $38,343.20 in child support for that period.
“The father was responsible for payment of one-half of the medical and dental expenses of the children, and the mother testified that the father had given her money, in the form of checks, to cover his one-half of the medical expenses of the children. The mother testified that the younger child had several medical conditions, including a genetic disorder, and that she had incurred approximately $8,000 in medical bills for the younger child in 2008. The father alleged that he did not have to pay for the medical treatment of the younger child insofar as it arose from his genetic disorder, pursuant to the May 2001 modification judgment. However, he admitted that he did have to pay half of the children’s regular dental costs.
“The mother stated that the father had provided some child support directly to her and that she was willing to allow the father’s child-support arrearage to be credited to reflect the payments that the father had made directly to her. The father submitted an exhibit into evidence that contained copies of approximately 19 canceled checks payable to the mother between March 2004 and January 2009, which totaled $11,614.73. The father admitted that approximately $414.73 from those payments was to reimburse the mother for payment of the younger child’s medical expenses. The father also submitted an exhibit into evidence that contained check stubs that purported to show that he had paid the *940 mother approximately $3,600 from July 2004 through July 2006. The mother further admitted that the father had paid her $600 in October 2007. The father also estimated that he had paid the mother approximately $2,500 in child support between June 2002 and March 2004 that he could not support with evidence from his check register or with canceled checks. The mother testified that at least $3,364.73 that the father had given her in 2008 was for payment of one-half of the younger child’s medical expenses for which the father was responsible. The mother also testified that approximately 80% of the money that the father had provided to her was for payment of his half of the children’s medical expenses. The father claimed that the checks he had given to the mother were for child support and not for medical expenses.
“The father owned his own plumbing business, which was incorporated in 2006. The father’s income-tax records demonstrated that his gross income was $40,801 in 2002, $15,304 in 2003, $13,612 in 2004, $47,327 in 2006, $97,187 in 2007, and $153,348 in 2008. The father stated that he did not have the ability to pay child support on a regular basis before 2006, but he admitted that he had had the ability to pay child support for the three years before the ore tenus hearing.”
Mullins, 58 So.3d at 818-20 (footnotes omitted).
On remand, the trial court entered a judgment that made the following specific findings of fact:
“4. The evidence reveals that the [father] made child support payments through the [cjlerk’s [o]ffice through May of 2002, but later never paid any child support through the clerk of the trial court from June 2002 through the date of the final hearing in October 2009 even though required to do so by the [d]ivorce [d]ecree as amended.
“5. The evidence further reveals that, even when prior custody orders of the court vested the [mother] with the primary custody of one or both children at specific intervals, both of the children lived by agreement with the [father] from time to time and the [father] claims a credit should be afforded to him against any child support that the [e]ourt determines to be due and owing.
“6. Accepting the proffered testimony of the [mother] as to intervals of time when the youngest child lived with the [father], the evidence also shows that the parties’ youngest child began living with the [father] in October of 2008 and the [mother] testified that she was not asking for child support for the period of time that the youngest child resided with the [father] beginning in October of 2008. The [mother] further testified that she was willing to give the [father] credit for any child support paid directly to her rather than being through the clerk of the court based on cancelled checks.
“7. As a result, for the period of time of June 2002 through August of 2009 when the [younger] child reached the age of majority, the [c]ourt finds that the sum of $42,942.12 as child support, including interest, would be due and owing pursuant to the [d]ecree of [d]ivorce, as amended, from the [father] to the [mother]. Subtracting child support that would have been due from the time the parties’ youngest child was living with the [father] beginning in October of 2008 through August 2009, reduces the total amount of child support arrearage *941 by $4,510.80 to $38,341.32.[1] Thus, the [c]ourt finds that the amount of child support owed by the [father] to the [mother] for nonpayment of child support from June of 2002 through October 2008 is $38,341.32.
“8. As credit against the child support arrearage determined above, the [father] submitted cancelled checks payable to the [mother] between March 2004 and January 2009 in the amount of $11,614.73, plus he contended he was due a credit of an additional $4,200.00 from check stubs or other admitted receipts of payment which the [c]ourt accepts. The [father] testified that approximately $414.73 from those payments was to reimburse the [mother] for payment of the younger child’s medical expenses and the remaining amount was for child support. By excluding the amount paid to the [mother] for medical expenses, the [c]ourt finds that a credit of $15,400.00 should be awarded to the [father] for support paid directly to the [mother] rather than through the clerk’s office, leaving a balance due and owing to the [mother] of $22,941.32.”
The trial court entered an judgment finding that the father’s child-support ar-rearage totaled $22,941.32, and it ordered the father to pay the mother this arrear-age in monthly installments of $500. The trial court also found the father guilty of 76 separate acts of contempt between June 2002 and October 2008 for his failure to pay child support through the office of the clerk of the trial court as required in the August 2001 modification judgment. The trial court sentenced the father to five days in jail for each act of contempt, for a total of 380 days in jail, with all but 5 days of the sentence suspended so long as the father complied with the trial court’s judgment. Finally, the father was ordered to pay the mother’s attorney’s fees in the amount of $7,000.
On appeal, the father raises several issues that can be summarized as follows: (1) a challenge to the trial court’s finding that he committed 76 separate acts of contempt; (2) a challenge to the trial court’s determination of his child-support arrear-age; and (3) a challenge to the trial court’s award of attorney’s fees to the mother.
Initially, we note that the trial court’s judgment did not specifically state whether it found the father guilty of criminal contempt or civil contempt.
“In 1994, our supreme court adopted Rule 70A, Ala. R. Civ. P., defining criminal and civil contempt arising out of civil actions. Civil contempt is the willful, continuing failure or refusal to comply ■with a court’s lawful order that by its nature is still capable of being complied with. Rule 70A(a)(2)(D); Chestang v. Chestang, 769 So.2d 294 (Ala.2000) (trial court’s contempt order made a finding of civil contempt where owner of servient tenement continued to interfere with use of easement by owner of dominant tenement and fines levied were compensatory in nature and not punitive).
“Rule 70A(a)(2)(C) defines two categories of criminal contempt: (i) misconduct in the court’s presence or ‘so near thereto as to interrupt, disturb, or hinder’ the proceedings and (ii) willful disobedience to a court’s order ‘where the dominant purpose of the finding of contempt is to punish the contemnor.’ ”
*942 Shonkwiler v. Kriska, 780 So.2d 703, 705 (Ala.Civ.App.2000) (second emphasis added).
In Gladden v. Gladden, 942 So.2d 362, 370 (Ala.Civ.App.2005), this court indicated that a consideration of the sentence imposed by the trial court could be used as a basis for determining whether a party was found guilty of criminal contempt or civil contempt when the judgment does not specify which type of contempt the party was guilty of committing. We noted that a “ ‘ “ ‘[c]ivil contempt seeks to compel or coerce compliance with orders of the court’ ” ’ ” and that “ ‘ “ ‘[t]he sanction for civil contempt continues indefinitely until the eontemnor performs as ordered.’ ” ’ ” Id. (quoting Davenport v. Hood, 814 So.2d 268, 272 (Ala.Civ.App.2000), quoting in turn Hill v. Hill, 637 So.2d 1368, 1370 (Ala.Civ.App.1994), quoting in turn State v. Thomas, 550 So.2d 1067, 1072 (Ala.1989)). See also Pate v. Guy, 934 So.2d 1070, 1072 (Ala.Civ.App.2005) (“[A] finding of civil contempt seeks to compel future compliance with court orders.”). Conversely, a finding of criminal contempt seeks to impose a punishment for disobedience of orders of the trial court, and, in Alabama, the sanction for a finding of criminal contempt is limited to a fine of $100 and imprisonment not to exceed five days. Gladden, 942 So.2d at 370. See § 12-11-30(5), Ala.Code 1975. See also Fludd v. Gibbs, 817 So.2d 711, 714 (Ala.Civ.App.2001) (“A finding of criminal contempt is appropriate where a party has shown disobedience to a court’s order and where the acts complained of were specific, identifiable violations from the past.”).
In Gladden, the trial court sentenced the former husband to five days in jail for his act of contempt, and this court concluded that the trial court had found the former husband guilty of criminal contempt “because the trial court sentenced the former husband to a definite term of five days in jail rather than sentencing him to an indefinite jail term lasting until [he complied with the trial court’s order].” 942 So.2d at 371.
In the present case, the mother argues that the trial court’s judgment found the father guilty of civil contempt based solely on the fact that the order of commitment to jail signed by the trial court states that the father was found guilty of civil contempt. However, the order of commitment to jail also sets forth a specific jail sentence to be served by the father. Accordingly, despite the fact that the order of commitment to jail indicates that the father was found guilty of civil contempt, we conclude that the trial court found the father guilty of criminal contempt because it imposed a definite jail sentence as the sanction for the father’s specific and identifiable violations of the August 2001 modification judgment from June 2002 through October 2008. Cf. Taylor v. Taylor, 560 So.2d 768, 770 (Ala.Civ.App.1990) (concluding that a suspended sentence was “primarily penal and not coercive in nature” because the suspended sentence was to be immediately imposed if the husband violated one of the trial court’s directives).
The father argues that the mother failed to prove, beyond a reasonable doubt, that he had willfully failed to pay child support through the clerk of the trial court. The father argues that the trial court erred in finding him in contempt (1) during the time that he and the mother had allegedly agreed that he did not have to pay child support and (2) during the time that the father paid child support directly to the mother.
“ ‘In order to establish that a party is in criminal contempt of a court order, a contempt petitioner must prove beyond a reasonable doubt that the party *943 against whom they are seeking a finding of contempt was subject to a “ ‘lawful order of reasonable specificity,’ ” that the party violated that order, and that the party’s violation of the order was willful. Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001) (quoting United States v. Turner, 812 F.2d 1552, 1563 (11th Cir.1987)).’ ”
Gladden, 942 So.2d at 371 (quoting L.A. v. R.H., 929 So.2d 1018, 1019 (Ala.Civ.App.2005)). “Furthermore, we have held that, ‘[ajbsent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly or palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court.’ ” Preston v. Saab, 43 So.3d 595, 599 (Ala.Civ.App.2010) (quoting Shonkwiler v. Kriska, 780 So.2d at 706).
It is undisputed that the August 2001 modification judgment required the father to pay his monthly child-support payment through the clerk of the trial court and that the father did not do so between June 2002 and October 2008. The father argues that his failure to pay child support through the clerk of the trial court from June 2002 through September 2004 was not willful because, he contends, he was operating under the agreement he allegedly made with the mother that he was not required to pay child support while he had physical custody of the parties’ older child. The record indicates that the terms of the parties’ agreement were disputed. However, according to the record, even the mother admitted that the parties had agreed that the father did not have to pay child support while he had physical custody of the older child and the older child was in high school, a period from June 2002 through December 2002. The trial court was free to determine the credibility of the parties’ testimony and to conclude that the mother’s testimony was more credible. See Pardue v. Pardue, 917 So.2d 857, 860 (Ala.Civ.App.2005) (concluding that the trial court was free to accept the father’s testimony and to reject the mother’s conflicting testimony regarding when the child lived with the father for purposes of determining the father’s child-support arrearage). But, because the record conclusively demonstrated that the parties had agreed that the father was not required to pay child support for at least a period of seven months, we cannot conclude that the mother proved beyond a reasonable doubt that the father’s failure to make his child-support payments through the office of the clerk of the trial court from June 2002 through December 2002 was willful. Cf. Hollis v. State ex rel. Hollis, 618 So.2d 1350, 1351 (Ala.Civ.App.1992) (plurality opinion; standard of review used in Hollis abrogated by Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994)) (“Although the husband cannot alleviate his child support obligations by claiming that he and the wife entered into a mutual agreement, which the wife admitted, this agreement does indicate that the husband was not guilty of contemptuous behavior in failing to comply with the judgment [requiring him to pay child support].”). Accordingly, we conclude that the trial court erred in finding the father guilty of criminal contempt on seven occasions between June 2002 and December 2002.
The father, citing Teichmann v. Teichmann, 772 So.2d 1196 (Ala.Civ.App.2000), also argues that the trial court exceeded its discretion by finding him guilty of criminal contempt during the months that he paid child support directly to the mother.[2] However, this court in Teich- *944 mann held that the trial court had exceeded its discretion by failing to credit the father’s child-support arrearage with payments made directly to the mother, despite the fact that the trial court had ordered the father to make his child-support payments through the office of the trial court’s accounts clerk. Id. at 1198. Teiclimann does not include a discussion regarding a finding of contempt, and, therefore, it does not support the legal proposition that it is cited for, i.e., that the trial court could not have found the father guilty of contempt when the evidence indicated he had made child-support payments directly to the mother, albeit in violation of clear terms of the August 2001 modification judgment.
As we stated above, the August 2001 modification judgment clearly required the father to make his child-support payments through the office of the clerk of the trial court, not directly to the mother, and the father failed to do so. Although the father is entitled to a credit for child-support payments made directly to the mother, see Teiclimann, supra, we cannot conclude that the trial court exceeded its discretion or was plainly or palpably wrong in concluding that the father willfully failed to pay child support through the clerk of the trial court during the periods that he paid child support directly to the mother. Accordingly, the trial court’s judgment finding the father guilty of contempt from January 2003 through September 2008 is affirmed (a period of 69 months).[3]
Next, the father argues that the trial court erred in calculating his child-support arrearage. He argues: (1) the trial court failed to give him a credit toward his arrearage for time that the older child lived with him, (2) that the trial court erred in not admitting evidence related to sums that he paid for support of the older child, and (3) that the trial court erred in including in its arrearage calculation the interest on child-support payments that he made directly to the mother.
“When a trial court receives evidence ore tenus in a case involving a child support arrearage, its judgment is presumed correct and will not be reversed on appeal unless the judgment is plainly and palpably wrong. Rubrigi v. Rubrigi, 630 So.2d 67 (Ala.Civ.App.1993). The determination of an amount of child support arrearage and the disposition thereof is largely a matter left to the sound discretion of the trial court. Id.”
Havard v. Havard, 652 So.2d 304, 308 (Ala.Civ.App.1994).
The father argues that the trial court erred in failing to apply a credit toward his child-support arrearage based on the support he provided to the older child while the older child lived with him. However, the father failed to cite any authority to support this argument in his brief to this court, as required by Rule 28(a)(10), Ala. R.App. P.
*945 “It is the appellant’s burden to refer this Court to legal authority that supports its argument. Rule 28(a)(10), Ala. R.App. P., requires that the argument in an appellant’s brief include ‘citations to the cases, statutes, [and] other authorities ... relied on.’ Consistent with Rule 28, ‘[w]e have stated that it is not the function of this court to do a party’s legal research.’ Spradlin v. Spradlin, 601 So.2d 76, 78 (Ala.1992) (citing Henderson v. Alabama A & M University, 483 So.2d 392, 392 (Ala.1986) (‘ “Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor function to perform all the legal research for an appellant.” Gibson v. Nix, 460 So.2d 1346, 1347 (Ala.Civ.App.1984).’)).”
Board of Water & Sewer Comm’rs of City of Mobile v. Bill Harbert Constr. Co., 27 So.3d 1223, 1254 (Ala.2009). Accordingly, we will not consider the father’s argument that the trial court erred in failing to apply additional credits to his child-support ar-rearage based on support he provided to the older child while the older child lived with him.
The father further argues that the trial court erred when it failed to admit into evidence certain financial records reflecting support he contributed directly to the son. It is well settled that “[a] trial court’s ruling on the admission or exclusion of evidence will be reversed only if it is shown that the trial court exceeded its discretion in so ruling.” Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 7 (Ala.2007).
The record reveals that the trial court sustained the mother’s objection to the entry of certain financial records from the father because the mother had requested those financial records before trial and the father had not properly produced them before trial. On appeal, the father maintains that he had properly made the financial records available to the mother before trial. The only authority cited by the father to support his argument on appeal is a reference to Rule 34, Ala. R. Civ. P. (“Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes”), and a citation to Rule 401, Ala. R. Evid., which defines “relevant evidence.” The father has cited no authority to support his argument that the trial court exceeded its discretion by determining that the financial records were inadmissible because the father had not properly produced the records to the mother before trial. Accordingly, we will not consider this argument. See Rule 28(a)(10); and Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (“Inapplicable general propositions are not supporting authority, and an appellate court has no duty to perform a litigant’s legal research.”)
Next, the father argues that the trial court erred in calculating the amount of his child-support arrearage because the trial court’s calculation included interest due on child-support payments that he had paid directly to the mother and was credited for. This court has reviewed the record in the present appeal and the record from Mullins v. Sellers, supra,[4], and we cannot find any indication that the father presented this argument to the trial court before raising it on appeal.
“The oft-quoted and long-standing rule is that an appellate court may not consider an issue raised for the first time on appeal. See Ex parte Weaver, 871 So.2d *946 820, 823 (Ala.2003); W.C. v. State Dep’t of Human Res., 887 So.2d 251 (Ala.Civ.App.2003); and Centers v. Jackson County Dep’t of Pensions & Sec., 472 So.2d 1069, 1070 (Ala.Civ.App.1985). ‘“A ... court should not be placed in error [by an appellate court] on matters which the record reveals it neither ruled upon nor was presented the opportunity to rule upon” ’ at trial or in a post-judgment motion. J.K. v. Lee County Dep’t of Human Res., 668 So.2d 813, 817 (Ala.Civ.App.1995) (quoting Wilson v. State Dep’t of Human Res., 527 So.2d 1322, 1324 (Ala.Civ.App.1988)); see also Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992).”
D.A. v. Calhoun Cnty. Dep’t of Human Res., 976 So.2d 502, 504 (Ala.Civ.App.2007). Accordingly, because there is no indication in the record that the father first raised this argument to the trial court, we cannot consider this argument. See Prescott v. Prescott, 6 So.3d 552, 553 (Ala.Civ.App.2008) (concluding that this court could not consider the argument made by the mother on appeal because the error she alleged the trial court had committed “occurred, if at all, in the trial court’s judgment” and that, because she did not “bring this issue to the trial court’s attention by filing a postjudgment motion,” the issue was improperly raised for the first time on appeal). Thus, we affirm the trial court’s determination of the father’s child-support arrearage.
Finally, the father argues that the trial court’s award of attorney’s fees to the mother was error in light of the fact that the trial court found him guilty of criminal contempt. In State ex rel. Payne v. Empire Life Ins. Co. of America, 351 So.2d 538, 545 (Ala.1977), our supreme court held that the award of attorney’s fees is not proper in a criminal-contempt action and that any award of attorney’s fees in such an action “must be considered as mere surplusage and severed from the judgment decree.” However, as we stated above, an appellate court “cannot put a trial court in error for failing to consider evidence or accept arguments that, according to the record, were not presented to it.” Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990) (concluding that the appellant’s argument for reversal of an award of attorney’s fees could not be considered because the appellant made the argument for the first time on appeal). Because there is nothing in the record indicating that the father presented to the trial court the argument that he makes on appeal regarding the award of attorney’s fees to the mother, this court cannot reverse the trial court’s judgment on that ground. See Prescott, supra.
Accordingly, we reverse the trial court’s judgment insofar as it found the father guilty of criminal contempt on seven occasions between June 2002 and December 2002, and we remand this cause to the trial court with instructions to enter a judgment consistent with this opinion. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. We note that subtracting $4,510.80 from $42,942.12 actually equals $38,431.32, not $38,341.32.

. The father’s argument is based on the premise that he cannot be found in contempt for *944 failing to make his child-support payments when the trial court gave him credit for making child-support payments during the same months. However, we note that the father, in his brief on appeal, does not make the distinction made by the trial court, i.e., that he was found guilty of contempt for his failure to pay child support, as ordered, through the office of the clerk of the trial court.

. Although there was an indication in the record that the father did not have the ability to pay his child-support obligation until approximately January 2006, the father has not asserted his inability to pay as a ground for reversal of any of the trial court’s findings of contempt. Because that issue was not raised on appeal, it has been waived. See Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) ("Indeed, it has long been the law in Alabama that failure to argue an issue in brief to an appellate court is tantamount to the waiver of that issue on appeal.”).

. On August 3, 2011, this court entered an order, ex mero motu, that incorporated the record from the father's previous appeal in Mullins v. Sellers, supra, into the record in this appeal.