MONROE, Judge.
Paul D. Hildesheim (“the father”) appeals from the trial court’s order, dated October 15, 1998, awarding judgments against him and in favor of Jeanne A. Hildesheim Velaski (“the mother”) in the amount of $2,873.04 for child-support ar-rearage and in the amount of $8,932 for *921 “insurance premiums incurred on behalf of the minor children for periods of time when [the father] should have provided insurance but failed to do so or failed to provide proof of same.” The father contends that the trial court erred when it awarded a judgment against him for insurance premiums and that the trial court incorrectly calculated the amount of the child-support arrearage.
The parties were divorced in May 1989. The trial court awarded custody of the parties’ three minor children to the mother and ordered the father to pay child support of $800 per month. In September 1991, the trial court modified the divorce judgment to require the father to pay $950 per month in child support.
In April 1997, the oldest minor child began living with the father. Thereafter, the mother and the father reached an agreement concerning the custody of the oldest minor child. In October 1997, the middle child also began living with the father. Sometime between March and May 1998, the oldest minor child returned to live with the mother.
In December 1997, the father moved to’ modify the divorce judgment to award custody of the middle child to him. The mother filed an answer to the father’s motion to modify and a counterclaim, seeking to have the father held in contempt for his failure to pay child support and requesting that the trial court require the father to provide the mother with proof of hospitalization insurance for the minor children and “such other further and different relief [to which] she may be entitled.”
After the oldest child returned to live with the mother, the mother filed a motion to modify. In an amendment to her motion to modify, the mother requested that the trial court recalculate the father’s child-support obligation because, she said, the calculation was based on inadequate figures (on April 14, 1998, the trial court had reduced the father’s child-support obligation to $366 per month), and to apply the amount retroactively. The mother contended that since the divorce the father had “failed and refused to provide proof of hospitalization insurance to the [mother],” and she requested that the trial court order the father to maintain hospitalization insurance for the minor children.
The trial court held a hearing and issued an order, requiring the father to pay $905.00 per month in child support. As previously noted, the trial court awarded judgments against the father in the amount of $2,873.04 for child-support ar-rearage and in the amount of $8,932 for insurance premiums paid by the mother. The father filed a motion to alter,' amend, or vacate the order, which was denied.
In his first issue, the father contends that the portion of the order awarding a judgment for $8,932 for insurance premiums paid by the mother must be reversed because, he says, he was “ambushed” at trial and was not given adequate notice that the mother would seek a judgment for insurance premiums that she contends she paid.
In Hawk v. Bavarian Motor Works, 342 So.2d 355, 358 (Ala.1977), our supreme court stated:
“If a party objects to the introduction of evidence at the trial on the ground that it is not within the issues framed by the pleadings, he must show that he would be actually prejudiced in maintaining his action or defense on the merits by the admission of the evidence.”
Our review of the record reveals that the father never requested a continuance or additional time to obtain evidence related to the issue regarding hospitalization-insurance premiums. The father does not contend that, with proper notice, he could have presented evidence that he had given proof of insurance (insurance cards, etc.) to the mother between 1989 and 1998. In light of the following excerpts from the trial transcript, we cannot say that the father showed that he was “actually preju *922 diced ... by the admission of the evidence.”
At the beginning of the hearing, the following exchange occurred between the father’s attorney and the mother’s attorney:
“[FATHER’S ATTORNEY]: The other issue raised ... was a question of hospitalization coverage and I sent a letter to [the mother’s prior attorney] along with the card showing that there was coverage in effect.
[[Image here]]
“[MOTHER’S ATTORNEY]: But I have a. document stating when [the father’s] health insurance became effective was not until January 1998. And my client has been providing the health insurance prior to that time. We have the effective date on his insurance policy. We have the evidence. Prior to that time we're asking the court to aivard to her a judgment for the amount of the insurance she’s provided during the years he did not provide it which amounts to $8,034 plus interest of $898.56.
[[Image here]]
“[FATHER’S ATTORNEY]: Is that in the pleading for — that we’re up on today[? That] is my question.
“Judge, all these issues that he’s raising were not properly surfaced [sic] in pleadings. Such as, they want back moneys for hospitalization insurance. I don’t recall seeing that in the request.”
(Emphasis added.)
During the mother’s testimony at trial, the following occurred:
“Q. Are you maintaining hospitalization and medical insurance on behalf of the children?
“A. Yes.
“[FATHER’S ATTORNEY]: Object. Not relevant.
“[MOTHER’S ATTORNEY]: We asked for it. It’s in our motion.
“THE COURT: Overruled. Overruled. I’ll let her answer it.
[[Image here]]
“Q. Okay. And why are you maintaining hospitalization insurance?
[[Image here]]
“A. Because my ex-husband has failed since the date of our divorce to provide an insurance card to me.
“Q. When is the first time you have ever gotten an insurance card?
“A. When I saw it in [my former attorney’s] office in April or May and it was a copy. I have not received an actual insurance card.
[[Image here]]
“A. April of’98.
[[Image here]]
“Q. Did [the father] ever give you anything or show you anything to indicate he had hospitalization insurance from 1989 to 1998?
“A. No, he has never—
[[Image here]]
“Q. Okay. And how much did it cost you to maintain this hospitalization insurance?
“[FATHER’S ATTORNEY]: Objection. Irrelevant, Judge.
“[MOTHER’S ATTORNEY]: It’s in my motion, Judge. I’ve asked for—
“THE COURT: I’ll let her testify to it. You can ask her about it. .Overruled.
“Q. How much does it cost you on a monthly basis?
“A. Approximately $78.
[[Image here]]
“Q. Okay. And how many months did you calculate that you provided that?
“A. Since ’89.
“Q. Was that 103 months to January of 1998?
“A. It was 103 months until January 1998.”
*923 As previously noted, the trial court awarded a judgment in the amount of $8,932 for “insurance premiums incurred on behalf of the minor children for periods of time when [the father] should have provided insurance but failed to do so or failed to provide proof of same. ” (Emphasis added.)
On page 12 of his brief on appeal, the father argues:
“[T]he father agreed to maintain hospitalization insurance on the minor children. He ivas not required to furnish proof of same to the mother (C.R.l). In this respect the sole basis for the mother’s claim for reimbursement of insurance premiums was because her former husband failed to provide insurance cards (R.T. 94). The court erred in ruling that the father was legally required to furnish proof that he had given insurance cards to the mother. He was only ordered to maintain the health insurance. He did so. His undisputed testimony was to the effect that he has provided health insurance for the children since the divorce (R.T. 56). Further, he testified that he had proof of hospital coverage prior to 1998, ‘but, not with me’ (R.T. 60). He met his burden of proof.”
(Emphasis added.) The father’s argument that the divorce judgment did not require him to furnish proof of the coverage to the mother is splitting hairs. Clearly, the mother would need proof of insurance coverage (an insurance card or the policy number of an effective policy and the name of the insurance company) to obtain medical attention for the parties’ minor children. There is no evidence that the father provided her with insurance coverage information between 1989 and 1998, and thus, the mother paid premiums for insurance to cover the parties’ minor children. Consequently, the trial court did not err in ordering the father to pay for insurance premiums paid by the mother. This portion of the judgment is affirmed.
In his second issue, the father contends that the trial court erred in its determination of a child-support arrearage of $2,873.04 when, by his calculations, the child-support arrearage should be $1,049.46. In its order, the trial court stated:
“11. [The mother] is hereby awarded a judgment against the [father] in the amount of $2,873.04, representing child support arrears as of September 30, 1998, after having given [the father] credit in the amount of $755.00 representing the time in which he had custody and giving retroactive effect to child support herein ordered.”
We have reviewed the evidence regarding the child-support arrearage, and are unable to determine how the trial court reached its total when it calculated the arrearage. Thus, we reverse that portion of the trial court’s judgment and remand for a recalculation of the arrearage. Kuhn v. Kuhn, 706 So.2d 1275 (Ala.Civ.App. 1997).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.