On January 13, 2003, the Montgomery Circuit Court entered a judgment divorcing Susan D. Hall ("the mother") and Malcolm J. Hall ("the father"). The divorce judgment incorporated a settlement agreement that provided, among other things, that the father would pay $300 monthly as child support directly to the mother; that the medical expenses of the parties' child would be divided equally between the parties; that the father would maintain a life insurance policy on his life, with the child named as the beneficiary; and that, "[i]f either party violates any provision of this Agreement[, he or she] shall, upon a judicial determination of such violation, be responsible for payment of all costs, expenses and attorney fees incurred in connection with the enforcement hereof." The trial court also incorporated a child-support withholding order setting the father's child-support obligation at $280 per month. There is no explanation for the discrepancy between the child-support provision in the settlement agreement and the child-support withholding order.[1]
On September 27, 2006, the mother filed a petition requesting that the father be required to show cause why he should' not be held in contempt for his alleged failure to pay child support, his alleged failure to pay his portion of the child's medical expenses, and his alleged failure to provide evidence of a life insurance policy naming the child as beneficiary. On October 4, 2006, the trial court set the mother's petition for a hearing on February 7, 2007. *Page 1074 
On February 5, 2007, the father moved for a continuance of the hearing, which was granted by the trial court on February 6, 2007; the trial court reset the hearing for March 19, 2007. On February 7, 2007, the mother filed an objection to the continuance. The trial court tried this case on March 19, 2007, and April 4, 2007.
On May 15, 2007, the trial court entered a judgment stating:
 "On January 13, 1993, this Court ordered the [father] to pay $280.00 per month in child support to the [mother] for a total amount of $3,360.00 per year. From January 1, 2001 until the time and date of this hearing, the [father]'s total child support obligation was $21,000 [$3,360.00 × 6 years (2001, 2002, 2003, 2004, 2005, 2006) + $840.00 (January, February, and March 2007 @ $280.00 per month)].
 "Both parties confirmed that the [father]'s child support payments were made by the [father] depositing the money into the [mother]'s bank account at Regions Bank. (See [Mother]'s Exhibits 1, 2, 3, 4, and 5.) Said bank statements indicate that the [father] paid a total of $19,058.75 (2001 — $2,923.00; 2002 — $3,020.00; 2003 — $2,960.00; 2004 — $2,640.00; 2005 — $7,365.75; 2006 — $150.00; and 2007 — $840.00[2]). Therefore, considering the child support monies paid by the [father] and acknowledging the [father]'s remittance of $280.00 to the [mother] on April 4, 2007, it appears the [father] has a total arrearage of $1,941.25 ($21,000 — $19,058.75).
 "The [mother] presented evidence of monthly bank statements for the aforementioned years indicating the child support monies paid by the [father]. However, there were missing statements for several months, including nine months of bank statements, and therefore deposits that would total $2,520.00 ($280.00 per month × 9 months). Bank statements are missing for June, July, August 2001; August 2002; February, May, July 2006; and February, March 2007. Because the parties agreed that all child support monies were paid by this method, the bank statements (or dated bank deposit receipts) for the missing months will confirm whether or not amounts were paid by the [father]. If said bank statements (or dated bank deposit receipts) showing additional amounts paid are produced to the Court within (30) thirty days of the date of this Order, the arrearage will be reduced accordingly.
 "The [father] has asked this Court to credit him for child support purposes with monies he paid for the said minor child's private school tuition in addition to child support. Evidence before this Court shows that the [father] paid $12,405.00 in private school tuition for the parties' minor daughter by some agreement with the [mother], about which the Court has no information. Because the verbal agreements between the parties were not reduced to writing and filed with this Court, the Court is without authority to credit the [father] with those monies gratuitously paid toward private school tuition against any child support arrearage. There was no petition pending before the Court to modify the final [divorce] decree, such that the Court could consider circumstances under which it could Order that the [father] pay private school tuition. Any monies paid by the [father] for private *Page 1075 
school tuition for said minor child shall be considered gratuitous.
 "Last, the [mother] alleged that the parties' minor child had incurred $765.00 in non-covered medical bills and the [father] was obligated to pay one-half in the amount of $382.50, pursuant to the January 13, 1993 Divorce Decree. However, the [mother] presented this Court with evidence of only $75.00 in unpaid medical bills, incurred by said minor child, owed to Montgomery Pediatric Dentistry.
 "Based on the foregoing, it is hereby ORDERED as follows:
 "1. That the [father]'s child support obligation shall remain at $280.00 per month pursuant to the January 13, 1993 Divorce Decree.
 "2. That after taking into consideration the child support payments made by the [father], together with the [mother]'s calculations, the Court finds that the [father] is in arrears in the amount of $1,941.25, plus court costs in the amount of $252.00, for a total arrearage of $2,193.25, and that the [father] is in contempt of court.
 "3. That the [father] shall be allowed to pay the $2,193.25 arrearage at $50.00 per month. The total amount to be paid per month shall be $330.00 ($280.00 + $50.00) and shall be effective May 18, 2007. The [father] is advised to maintain receipts for all payments as to prove monies paid if a question arises again.
 "4. The [father] was Ordered to present a copy of a $50,000 life insurance policy, naming [the child] as sole beneficiary, to the [mother] within one week of the date of the hearing. That Order is affirmed.
 "5. That the parties shall have (30) thirty days from the date of this Order to produce bank statements (or dated bank deposit receipts) showing child support deposits made during the missing nine months, so as to credit the [father] and reduce the arrearage.
 "6. That the [father] shall pay to the [mother] $37.50, representing one half the cost of uncovered medical bills, incurred by the parties' minor child, by 5:00 p.m. May 18, 2007."
On June 12, 2007, the mother filed a motion to alter, amend, or vacate the trial court's May 15, 2007, judgment. On July 12, 2007, the trial court set a hearing on the mother's motion for August 13, 2007. On July 17, 2007, the father filed a response to the mother's postjudgment motion; that same day he filed a motion to continue the hearing on that motion. On August 8, 2007, the trial court granted the father's motion to continue and reset the hearing for August 20, 2007. The trial court held a hearing on August 20, 2007. The mother's motion was subsequently denied by operation of law on September 10, 2007. The mother timely appealed.
 Facts
The mother testified that the father had deposited his child-support payments into a checking account at Regions Bank ("the checking account"). The father agreed that "[a] lot of times" he had deposited his child-support payments into the checking account. The mother initially testified that the account had been set up solely for the father to deposit his child-support payments; however, she later testified that she had had to deposit funds into the account to keep the account open. She also later stated that "some" of the deposits to the account had been made by her.
At the first hearing, on March 19, 2007, the mother testified that in December 2005 the father was already in arrears and that the father had not paid any child support since that month. The mother testified *Page 1076 
that the father's arrearage totaled $5,405 as of August 31, 2006; however, it is unclear whether the mother used the $300 or the $280 figure to calculate that arrearage. The father admitted that he had not paid any child support between December 2005 and August 2006. At the second hearing, on April 4, 2007, the parties agreed that the father had paid only $280 between the first and second hearings. At the second hearing, the mother introduced documents in which she had recorded the amount of child support that the father had paid in 2001, 2003, 2004, and January through July 2005. The mother entered into evidence all the bank statements from the checking account dating back to 2001 except the statements from the following months: June through August 2001; August 2002; February, May, and July 2006; and January through April 2007.
At the second hearing, the father entered into evidence an exhibit showing his current wife's estimation of the amount of child support that the father had paid each month. The father's current wife testified that she had calculated the arrearage by using the mother's bank statements to determine what "looked like" amounts deposited for child support. The father's current wife testified that she had used the mother's figures for the months with no statements. The exhibit prepared by the father's current wife showed that between January 2001 and the date of the second hearing, the father's total child-support obligation was $21,280 but that he had paid only $14,710, leaving an arrearage of $6,570.
 Discussion I.
The mother first argues that the trial court erred in calculating the father's child-support arrearage. "[T]he determination of a child-support arrearage is within the sound discretion of the trial court, and absent a showing of an abuse of discretion the trial court's judgment will not be reversed."Hayes v. Hayes, 949 So.2d 150, 152 (Ala.Civ.App. 2006). The party alleging that a child-support arrearage exists has the burden of establishing the existence and the amount of that arrearage. Tanana v. Alexander, 404 So.2d 61, 63
(Ala.Civ.App. 1981).
The mother's main argument is that the trial court gave the father credit for certain deposits that had been made by the mother. She argues that the trial court considered all the deposits that were made into the checking account to be child-support payments made by the father even though it was undisputed that not all the deposits had been made by the father. She further argues that the trial court credited the father with paying $840 in child support in 2007 when the undisputed testimony demonstrated that he had paid only $280.
Based on the wording of the trial court's judgment, and considering the fact that our calculation of the total deposits into the checking account from 2001 to 2006 is reasonably close to the trial court's calculation of total child-support payments made during those years, it appears that the trial court did, in fact, credit all the deposits as child-support payments. We note that there was no evidence presented to support a finding that all the deposits made into the checking account had been made by the father. In fact, the mother specifically testified that she had deposited money into the checking account. The father did not even claim to have made all the deposits. There is nothing in the record to support the trial court's calculation of child support for the years 2001 to 2006. Because the trial court's calculation of the arrearage during the years 2001 to 2006 is unsupported by the evidence, we conclude that the trial court exceeded its discretion *Page 1077 
in calculating the father's child-support arrearage for 2001-2006.
The mother also argues that the trial court erred by crediting the father with paying $840 in child support in 2007. She points out that she and the father agreed at trial that the father had paid only $280 in 2007 and that that amount was paid in April 2007. There is no evidence indicating that the father made any payments in the first three months of 2007. Accordingly, there is no evidence in the record to support the trial court's finding that the father had paid $840 in the first three months of 2007. It appears that, although the trial court found the father had paid $840 in 2007, the trial court did not actually give the father credit for the $840 when it calculated his child-support arrearage. Because we are already reversing the trial court's calculation of the father's arrearage for the years 2001-2006, on remand the trial court is also instructed to calculate the father's child-support arrearage for 2007 based on the evidence as set forth above.
 II.
The mother next argues that the trial court erred by failing to hold the father in contempt. We note, however, that the trial court did, in fact, hold the father in contempt of court. Accordingly, we cannot hold the trial court in error on this point.
 III.
Finally, the mother argues that the trial court erred by failing to order the father to pay the mother's court costs and attorney fees. In support of her argument, the mother points to a provision in the divorce judgment that states: "If either party violates any provision of this Agreement[, he or she] shall, upon a judicial determination of such violation, be responsible for payment of all costs, expenses and attorney fees incurred in connection with the enforcement hereof." "[W]hether to grant costs [or] an attorney's fee . . . is within the sound discretion of the trial court, and the exercise of such discretion will not be disturbed on appeal unless the trial court's judgment was plainly and palpably wrong." K.R.D. v.E.D., 622 So.2d 398, 399 (Ala.Civ.App. 1993).
Initially, we note that the trial court did in fact, order the father to pay the mother's court costs. Further, we note that the mother did not hire an attorney until the trial court had already entered a judgment setting the father's arrearage and finding him in contempt of court. No changes in the judgment were made after the mother's employment of an attorney. Accordingly, we cannot find that the court exceeded its discretion by not awarding the mother an attorney fee.
Based on the foregoing, we reverse the trial court's judgment with regard to the child-support arrearage and remand this cause for the trial court to enter a judgment in accordance with this opinion. We affirm the judgment in all other respects.
The mother's request for the award of an attorney fee on appeal is granted in the amount of $1,500.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and POTMAN, BRYAN, and THOMAS, JJ., concur.
[1] We note that, although the amount of the father's monthly child-support obligation was in dispute, the trial court used the amount of $280 in calculating the father's arrearage. The mother does not challenge that decision on appeal.
[2] The $840 amount from 2007 is, for reasons unknown to this court, apparently not included in the total amount of $19,058.75. *Page 1078