On Application for Rehearing

BRYAN, Judge.
The opinion of February 3, 2012, is withdrawn, and the following is substituted therefor.
Julia W. Faellaci appeals from a judgment entered by the Houston Circuit Court.

Background and Procedural History

This is the second time these parties have appeared before this court. See Faellaci v. Faellaci 67 So.3d 923 (Ala.Civ. App.2011). We set forth the pertinent background and procedural history of this case in Faellaci, which we quote below, and we use the terms defined therein as defined terms in this opinion.:
“Julia W. Faellaci (‘the wife’) and Jared S. Faellaci (‘the husband’) were married on July 22, 1995, and three children were born during the parties marriage: a boy, born in May 2000; and two girls, one born in September 2002 and the second born in April 2004 (collectively referred to hereinafter as ‘the children’). On May 8, 2006, the Houston Circuit Court (‘the trial court’) entered a judgment of legal separation that incorporated a separation agreement that had been signed by the parties on or about April 10, 2006 (‘the separation agreement’). Pursuant to the separation agreement, the wife exercised sole custody of the children, subject to the husband’s visitation rights that were set forth in the separation agreement. The separation agreement also contained the following provision regarding the husband’s child-support obligation:
“‘The parties agree that the [h]us-band’s income exceeds the Alabama Child Support Guidelines, and the [hjusband agrees to promptly pay child support for the minor children of the parties in the sum of $5,000.00 monthly. [The hjusband further agrees as additional child support, to pay 50% of the net after tax income of any commission or bonus in excess of his base salary and will supply the necessary W-2’s or 1099’s at the end of each year as proof of compliance with this provision.’
“On February 28, 2008, the husband filed a petition to set aside the separation agreement and a complaint for a divorce. The wife filed a motion to dismiss the husband’s petition to set aside *525 the separation agreement, an answer to the husband’s complaint for a divorce, and a petition for a rule nisi alleging that the husband had failed to fully comply with the terms of the separation agreement regarding his child-support obligation. The husband subsequently filed a motion to convert his petition to set aside the separation agreement to a petition for modification of the separation agreement. The husband alleged that a material change of circumstances existed to support modification of the separation agreement regarding child support, custody, and visitation. The husband requested joint custody of the children, expanded visitation rights, calculation of his child-support obligation pursuant to Rule 32, Ala. R. Jud. Admin., and a dissolution of the marriage.
“Following a joint motion filed by the parties, the trial court entered a judgments on November 25, 2008,] divorcing the parties and reserving jurisdiction to enter a final judgment resolving the issues that remained pending before the trial court. The trial court further ordered that the judgment of legal separation and the provisions of the separation agreement remained valid until a final judgment was entered.
“Following an ore tenus hearing, the trial court entered a judgment on November 10, 2009, that awarded the parties joint legal custody of the children, awarded the wife primary physical custody of the children, and awarded the husband specific visitation rights. The trial court further ordered the husband to pay child support in the amount of $4,000 a month, and it ordered the husband to pay the wife his child-support arrearage, which was determined to be $100,000. Pursuant to the trial court’s judgment, all other provisions of the separation agreement remained in ‘full force and effect.’
“The wife filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., alleging, among other things, that the trial court had exceeded its discretion by failing to award her interest on the husband’s child-support arrearage. The trial court conducted a hearing on the wife’s postjudgment motion on January 5, 2010. On January 6, 2010, the trial court entered an order that stated: ‘After hearing, [the wifej’s motion for a new trial is denied, except interest calculations and the two issues [regarding visitation] upon which the parties have agreed. Attorneys shall submit [an] amended decree within 14 days.’ The husband subsequently filed a ‘response to request for interest on arrearage,’ arguing that the he does not owe interest on his child-support arrearage because, based on the child-support language in the separation agreement, there was no ascertainable due date for his child-support obligation. The trial court conducted a hearing on the husband’s motion on February 25, 2010, but the record does not contain any further orders entered by the trial court. The wife filed a notice of appeal on April 16, 2010.”
67 So.3d at 923-25 (footnote omitted).
We dismissed the wife’s appeal as having been taken from a nonfinal judgment because the trial court’s postjudgment order “left something more for the trial court to do, i.e., to enter an order making a determination of the amount of interest owed by the husband [on his child-support arrearage] and setting forth the husband’s modified visitation rights as agreed upon by the parties.” Id. at 926.
After this court issued a certificate of judgment in Faellaci, the trial court conducted a hearing on April 19, 2011, and entered a judgment on May 3, 2011, that *526 adopted the parties’ agreement regarding visitation issues and that held that the husband was to pay the wife $100,000 within 120 days to “clear up and any all claims of unpaid child support.” The trial court further held that no interest should be awarded on the child-support arrearage because the child-support provision in the separation agreement was “so ambiguous ... that the [c]ourt cannot determine a date for the accrual of interest on the child-support arrearage.” All other relief requested by the parties was denied, and the wife filed a timely notice of appeal.

Issues

The wife raises five issues for this court’s review on appeal: (1) whether there was insufficient evidence to support a change in legal custody of the children; (2) whether there was insufficient evidence to support a modification of the husband’s child-support obligation; (3) whether there was insufficient evidence to support the trial court’s determination as to the husband’s child-support arrearage; (4) whether the trial court erred by failing to award the wife interest on the child-support ar-rearage; and (5) whether the trial court considered inadmissible evidence relating to a mediation agreement when rendering its judgment.

Facts

The trial court conducted an ore tenus proceeding over two days; the first hearing was held in August 2009 and the second hearing was held in October 2009. During the August 2009 hearing, the wife stated that she did not want the husband to have joint legal custody of the children because the husband had “given her sole custody” in the separation agreement and she did not see any reason why that custodial arrangement should change. The husband stated that he wanted joint legal custody of the children so that he would not be in a “vacuum” without a voice when it came to making decisions concerning the children.
The record indicates that the wife had unilaterally decided to withdraw the parties’ oldest child from private school and to begin homeschooling the child because she thought he was struggling in school. However, the record indicates that the child had received As and Bs in his first- and second-grade years in school before the wife began homeschooling him. According to the wife, she had informed the husband of her decision, but the husband testified that he was not given an opportunity to provide input. The husband testified that he had asked the wife dozens of times who the children’s doctors were and that the wife had not responded to his requests for that information until approximately one month before trial. The wife denied that the husband had repeatedly asked her who the children’s doctors were, and she testified that she had responded to the husband’s first request for that information via a text message. The record also indicates that the wife had taken one of the children to the hospital to have tests done after the child exhibited unusual behavior and that she had not informed the husband that she had taken the child to the hospital to have the tests performed. According to the husband, the wife never shared medical information regarding the children with him, and, he said, he found out that one of the children had been in the hospital from the children.
The wife stated that she does not allow the husband to e-mail her and that she only occasionally answers his telephone calls. The husband stated that the wife turns off her home telephone, that she rarely answers her cellular telephone, that her voicemail is always full so that he cannot leave messages, and that they only way he can communicate with the wife is through text messaging. The wife pre *527 sented evidence indicating that the husband is difficult to communicate with and that he had bombarded her with e-mails before she stopped using the e-mail account to which the husband had access.
The wife testified that, after the parties went to mediation, the husband thought that he had joint legal custody of the children. One of the parties’ children was subsequently admitted to the hospital for a tonsillectomy, and, the wife asserted, at the hospital the husband had “shadowed her” and had repeatedly asserted his rights as a joint custodian. However, on another occasion, the wife took one of the children to the hospital for treatment of a possible snake bite and, when the wife contacted the husband, he told her that he trusted her judgment and allowed her to make the decisions about treatment. During the October 2009 hearing, the wife stated that her problem with allowing the husband to have joint legal custody of the children was that he became “overly involved” with parenting and that he was “just extreme.” The wife stated that she wanted to be able to communicate with the husband about the children but that the husband made it difficult and his behavior was much worse after the mediation when he thought he had joint legal custody.
The parties presented a significant amount of evidence, testimonial and documentary, in an effort to determine the amount of the husband’s child-support ar-rearage. It was undisputed that the husband did not owe the wife any arrearage on the base amount of his child-support obligation, i.e., his obligation to pay $5,000 a month. The record indicates that the husband had paid $5,000 a month in child support through May 2009, at which time he began paying the wife $4,000 a month in child support.[1] Accordingly, the husband’s arrearage was based solely on his failure to pay the wife “50% of the net after tax income of any commission or bonus in excess of his base salary.”
At the August 2009 hearing, the wife agreed that, in 2006, the husband had paid her approximately $128,000 as a share of his commissions or bonuses plus $60,000 in monthly support, amounting to total child-support payments in 2006 in the amount of approximately $188,000. However, during the October 2009 hearing, the wife testified that the husband had paid her only approximately $184,000[2] in 2006 and that two lump sums included in that amount should not have been applied toward the husband’s child-support obligation; specifically, she asserted (1) that $39,500 from those payments was for repayment of a loan she had given to the husband for a tithe[3] and (2) that $5,200 from those payments was used to pay the oldest child’s private-school tuition as agreed by the parties. The wife stated that the husband had not paid her any share of his commissions or bonuses in 2007 or 2008.
The husband stated that his yearly base pay was approximately $210,000 and that he was paid commissions on a quarterly *528 basis. According to the husband, the tax rate on his commissions was approximately 40%, and he testified that his net commissions earned in 2006 equaled $180,000 and that his net commissions earned in 2007 equaled $120,000, so that he owed the wife $90,000 in 2006 and $60,000 in 2007. According to the husband, based on his estimation of his net commissions in 2006, he had overpaid the wife approximately $38,000 in 2006. Taking his alleged 2006 overpayment into account, the husband contended that he owed the wife only $22,000 as a share of his commissions for 2007. The husband requested that the trial court eliminate his obligation to pay the wife 50% of his net commissions and bonuses and that any change to his child-support obligation be made retroactive to February 2008, when he filed his complaint. The parties agreed that the husband would not owe the wife any share of his commissions or bonuses in 2008 if the trial court eliminated the husband’s obligation to pay commissions and bonuses in its judgment and made the change retroactive to when the husband filed his complaint for a divorce, i.e., February 2008.
The wife testified that she calculated the husband’s net commissions and bonuses in 2006, 2007, and 2008 by extrapolating his gross income from his income-tax returns and subtracting his salary to determine his gross commissions; then, she said, she reduced the gross commissions by a proportionate amount of taxes paid to determine the amount of his net commissions.[4] She then divided that number by one-half to determine how much she believed she should have been paid. At the October 2009 hearing, the wife presented a summary exhibit of her calculations, and she alleged that the husband owed her an additional $68,491.19 for 2006, $94,161.62 for 2007, and $33,640.30 for 2008; thus, according to the wife, the husband’s child-support arrearage totaled $191,293.11 for 2006, 2007, and 2008.[5]
The husband stated that his monthly expenses, not including his child-support obligation, totaled $7,800. He estimated that, after he paid his monthly child-support obligations, he had approximately $120,000 in yearly income to pay his expenses. The wife testified that the “basic monthly expenses” for her household totaled $5,165. The wife stated that she had not included some of her expenses, such as expenses for clothing, cosmetics, and haircuts, in that calculation.

Standard of Review

In Robinson v. Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001), this court set forth the appropriate standard of review of a judgment that is entered after the presentation of ore tenus evidence:
“A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala.1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly *529 and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).”

Discussion

I. Joint Legal Custody
On appeal, the wife first argues that the trial court erred by modifying custody of the children so that the husband was awarded joint legal custody because, she contends, the husband failed to prove a material change in circumstances since the parties agreed to allow the wife to exercise sole custody of the children in the separation agreement. Before we begin our discussion of the merits of this argument, we must determine what burden of proof applied to the husband’s request for joint legal custody and the wife’s request to remain the sole custodian of the children.
The wife argues that, because there existed a judgment, i.e., the judgment of legal separation adopting the parties’ separation agreement, awarding her sole custody of the children, the husband was required to make a threshold showing of a material change in circumstances in order to support changing legal custody of the children. However, such a position is not supported by § 30-2-40, Ala.Code 1975, which sets forth the law as it relates to legal separations in Alabama. Section 30-2-40(e) specifically provides: “If either party to a legal separation later institutes an action for dissolution of the marriage, the best interest of the child standard shall apply to the determination of child custody.” According to the plain terms of § 30-2-40(e), our legislature has determined that the custodial terms of a legal-separation agreement do not have the same legal effect as a determination of custody in an original divorce judgment. Instead, if either party to a legal separation later decides to seek an absolute divorce, a trial court is required to apply only “the best interest of the child standard to the determination of child custody,” which is the same standard a trial court must apply in an original divorce action. See Lowery v. Lowery, 72 So.3d 701, 704 (Ala.Civ.App.2011) (citing Ex ;parte Couch, 521 So.2d 987, 989 (Ala.1988), and holding that, in original divorce actions, the parties stand on equal footing and neither party has a presumption of entitlement to custody; instead, the primary concern is the best interests of the children). See also Comment to § 30-2-40 (“Under subsection (e), the ‘best interest’ of the child standard is applied if an action for divorce is filed subsequent to a legal separation. This is consistent with current case law which applies the ‘best interest’ standard rather than the Ex parte McLendon [, 455 So.2d 863 (Ala.1984),] standard when temporary custody arrangements occur pending a divorce.”). Accordingly, we conclude that the husband did not have the burden of proving that a material change in circumstances sufficient to support a modification of custody had occurred since the entry of the judgment adopting the parties’ legal-separation agreement.
To the extent that the wife argues that there was insufficient evidence to support a finding that an award of joint legal custody would serve the best interests of the children, we disagree. In Cleveland v. Cleveland, 18 So.3d 950, 952 (Ala.Civ.App.2009), the wife in that case appealed a trial court’s award of joint legal custody in an original divorce action, and we began our discussion “by acknowledging the legislative declaration on the subject” of joint legal custody:
“ ‘It is the policy of this state to assure that minor children have fre *530 quent and continuing contact with parents who have shown the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage.... ’
“Ala.Code 1975, § 30-3-150. Pursuant to that policy, Ala.Code 1975, § 30-3-152, requires trial courts to consider in every divorce case whether awarding joint custody will serve the best interests of the child. In making that determination, trial courts
“ ‘shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
“‘(1) The agreement or lack of agreement of the parents on joint custody.
“‘(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
“ ‘(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.
“ ‘(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
“ ‘(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody.’
“Ala.Code 1975, § 30-3-152(a).”
Id at 952-53.
The wife contends that the evidence indicated that allowing the husband to exercise joint legal custody of the children would not serve the best interests of the children because it would promote more dissension and disputes between the husband and the wife. We have thoroughly reviewed the record in this case, and we have taken note of the comments made by the trial-court judge during the ore tenus hearings, especially the comments indicating that the trial-court judge believed that there existed a power struggle between the husband and the wife and that the children were the ones that were benefiting the least from the custodial arrangement that existed at the time of trial, i.e., the wife’s exercising sole custody. Although the record indicates that the wife did not want to share joint legal custody with the husband, see § 30 — 3—152(b), Ala. Code 1975 (providing that a trial court may award a form of joint custody even if both parties do not agree, so long as the best interests of the children are served), and that the parties had a history of being unable to communicate effectively, we cannot conclude that the trial court’s judgment is so unsupported by the evidence as to be plainly or palpably wrong. As noted above, it is the policy of this 'state to encourage both parents “to share in the rights and responsibilities of rearing their children.... ” § 30-3-150. With this policy consideration in mind, and considering the evidence presented at trial, we cannot conclude that the trial court erred by awarding the husband joint legal custody of the children.
The wife also argues that the award of joint legal custody should be reversed because the trial court was under the erroneous impression that the husband needed to be awarded joint legal custody in order to have access to the children’s medical or school records. See § 30-3-154, Ala.Code 1975 (providing that all records and information pertaining to a child are equally accessible by both parents in all types of custody arrangements, unless prohibited by court order or statute). Although some comments made by the trial-court judge during the hearings suggest *531 that the trial-court judge thought the husband should be awarded joint legal custody so that he could have access to the children’s records, we have already concluded that the trial court’s award of joint legal custody was supported on other grounds; thus, any misunderstanding on the part of the trial-court judge relating to the scope of § 30-3-154 was harmless error. See Rule 45, Ala. R.App. P. (providing that a judgment will be reversed on appeal only if the error committed by the trial court “probably injuriously affected substantial rights of the parties”).
The wife further argues that the award of joint legal custody must be reversed because the trial court considered the parties’ mediation agreement — wherein the wife had agreed to allow the husband to exercise joint legal custody — when it awarded the husband joint legal custody.[6] Assuming that the trial court considered the terms of the parties’ mediation agreement when making its decision to award the parties’ joint legal custody and that consideration of that agreement was erroneous, we still cannot conclude that the award of joint legal custody should be reversed because, as we stated above, the trial court could have found, based only on the evidence presented at trial, that an award of joint legal custody would serve the best interests of the children. See Rule 45.
Finally, the wife argues that, if the trial court relied on the testimony of the parties’ oldest child in awarding the husband joint legal custody, such reliance was error because her constitutional right to confront a witness was violated because the trial court made the husband and the wife leave the courtroom during the child’s testimony, over the wife’s objection. However, based on our review of the record, none of the oldest child’s testimony was necessary to support the trial court’s custody determination. If anything, the child’s testimony benefited the wife because the child testified, contrary to what the husband had asserted, that the wife had never discouraged the children from visiting the husband. Accordingly, even if the trial court erred by making the husband and the wife leave the courtroom during the oldest child’s testimony, such error was harmless. See Rule 45.
Accordingly, we affirm the trial court’s judgment insofar as it awarded the parties joint legal custody of the children.
II. Child Support
Next, the wife argues that the trial court erred by modifying the husband’s child-support obligation from $5,000 a month to $4,000 a month and by eliminating the provision in the parties’ legal-separation agreement that allowed the wife to collect 50% of the husband’s net commissions and bonuses as child support. The wife contends that the husband failed to prove that there had been a material change in circumstances sufficient to support modifying the child-support terms of the legal-separation agreement. However, as we did with regard to the wife’s argument that a material change in circumstances was necessary to modify custody, we must determine the appropriate burden of proof for a party who seeks to establish his or her child-support obligation in an original divorce action following the entry of a legal- *532 separation judgment.[7] We conclude that, in an .original divorce action, a party is not required to prove a material change in circumstances since the entry of a legal-separation judgment even if a legal-separation judgment was in operation when the divorce action was filed.
Section S0-2-40(a)(3), Ala.Code 1975, requires a trial court to enter an order for child support in compliance with Rule 32, Ala. R. Jud. Admin., when it enters a judgment of legal separation. However, unlike a determination of custody in a divorce action following the entry of a legal-separation judgment, § 30-2-10 does not specifically address what burden of proof should be applied to a determination of child support in a divorce action following the entry of a legal-separation judgment.
As we have discussed already, a custodial arrangement in a legal-separation agreement does not bind the parties in a subsequent action for a divorce — i.e., neither party has to meet the burden of proof that would otherwise exist in an action to change a custodial determination in a prior judgment. Instead, the legislature has determined that the custody of any children in question should be determined based on the same standard of proof that applies in an initial divorce action. Likewise, parties to a legal-separation agreement are not bound by the terms of the separation agreement relating to alimony and division of property unless the parties agree to incorporate those terms into a subsequent divorce judgment. See § 30-2-40(d), Ala. Code 1975 (providing, however, that a trial court may consider the terms of the legal-separation agreement relating to alimony and property settlement upon final dissolution of the marriage). As noted in the Comment to § 30-2-40, a “legal separation is usually intended to be temporary....” Thus, “different considerations may well exist” at the time the parties enter into the legal-separation agreement “than if the parties or court were permanently dissolving the marriage.” Id [8]
As we concluded above regarding the child-custody provisions of a legal-separation agreement, we conclude that the child-support terms of a legal-separation agreement do not have the same legal effect as a child-support judgment in an original divorce action. Therefore, we conclude that, in an action for a divorce following the entry of a judgment adopting a legal-separation agreement, the noncustodial parent is not required to prove a material change in circumstances in order to “modify” his or her child-support obligation. Accordingly, the trial court was required to apply Rule 32 to the determi *533 nation of the husband’s child-support obligation, without considering whether there had been a material change in circumstances since the entry of the judgment adopting the parties’ legal-separation agreement.[9]
In her application for rehearing, the wife argues that this conclusion overlooks or misapprehends § 30-2-40(c), Ala.Code 1975, and Rule 32(A)(3)(b), Ala. R. Jud. Admin. We will address each in turn.
Section 30-2-40(c) provides:
“If a party files a complaint for a decree of legal separation rather than a decree of dissolution of marriage, the court may grant the legal separation. The terms of a legal separation can be modified or dissolved only by written consent of both parties and ratification by the court or by court order upon proof of a material change of circumstances. A proceeding or judgment for legal separation shall not bar either party from later instituting an action for dissolution of the marriage.”
We cannot conclude that § 30-2-40(c) requires a party in an original divorce action to prove a material change in circumstances since the entry of a legal-separation judgment in order for the trial court to establish the noncustodial parent’s child-support obligation. Section 30-2-40(c) does not, as the wife implicitly argues, apply to the “modification” of the terms of a legal-separation agreement after a divorce complaint has been filed; § 30-2-40(c) applies when the parties seek a modification of the terms of the separation agreement while they are operating under that agreement, before a divorce action has been filed.
Furthermore, we are not persuaded by the wife’s argument on rehearing that Rule 32(A)(3)(b) required the husband to plead and prove a material change in circumstances in this original divorce action in order to “modify” the child-support terms of the parties’ legal-separation judgment. Rule 32(A)(3)(b) provides:
“(A) Child-Support Guidelines Established. Guidelines for child support are hereby established for use in any action to establish or modify child support, whether temporary or permanent....
[[Image here]]
“(8) Modifications. The guidelines shall be used by the parties as the basis for periodic updates of child-support obligations.
[[Image here]]
“(b) A party seeking a modification of child support must plead and prove that there has occurred a material change in circumstances that *534 is substantial and continuing since the last order of child support.”
Certainly, in an action to modify a divorce judgment, or any other judgment establishing an initial child-support obligation, a petitioning parent must prove the existence of a material change in circumstances that is substantial and continuing since the entry of the last order of child support in order to modify the noncustodial parent’s child-support obligation. However, in those cases, any subsequent modification of the initial child-support obligation is part of the same action. A divorce action filed after the entry of a legal-separation judgment is distinguishable because an action in which a legal-separation judgment is entered is a wholly separate proceeding from a divorce action.[10] Pursuant to § 30-2-40(c), a trial court has continuing jurisdiction to modify the terms of a legal-separation agreement while the parties are separated. However, once one party files for a divorce, and a new action is commenced, a trial court must operate pursuant to its authority under § 30-2-1, Ala.Code 1975 (granting a circuit court the power to divorce parties from the bonds of matrimony upon a complaint filed by one of the parties). The same legal standards and burdens of proof apply in every divorce action in this state. Nothing in § 30-2-40 — i.e., the only statutory authority on legal separations in Alabama — indicates that the existence of a legal-separation judgment changes the legal standards and burdens of proof to be applied in a subsequent action to dissolve a marriage. Although parties to a legal-separation agreement are free, like any other parties who file for a divorce, to reach an agreement regarding the issues presented in the divorce action, they are not bound by the terms of the legal-separation agreement in the divorce action. Therefore, we conclude that the entry of an initial divorce judgment following the entry of a legal-separation judgment is not a “modification” of the legal-separation judgment; a divorce action is a separate action, and the law applicable to an initial divorce action applies.
Because it was undisputed that the husband’s adjusted gross income exceeded the uppermost levels of the child-support schedule in the appendix to Rule 32, as it existed in February 2008 when the husband filed his complaint for a divorce, “the amount of child support should be left to the discretion of the trial court.” Dyas v. Dyas, 683 So.2d 971, 973 (Ala.Civ.App. 1995) (citing Rule 32(C)(1), Ala. R. Jud. Admin.).
“When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor’s ability to pay for those needs.... To avoid a finding of an abuse of discretion on appeal, a trial court’s judgment of child support must satisfy both prongs.”
Id. at 973-74 (footnote omitted).
The husband’s ability to pay $4,000 a month, or even $5,000 a month, in child support is not in dispute. However, the wife contends that the undisputed evidence presented to the trial court indicated “that the basic household expenses (for recurring expenses and necessities alone) for the children and the home in which they reside was $5,165.” (The wife’s brief at p. *535 34.) However, the wife did not testify that those expenses were related only to the needs of the children. Instead, she testified that they were “household expenses,” and, although she testified that her calculation did not include some of her expenses such as expenses for clothing and haircuts, the trial court could have concluded that only $4,000 of the $5,165 cost of the wife’s basic household expenses was attributable to the three children and that the remainder of those expenses was attributable to the wife. Accordingly, we find no error in the trial court’s judgment setting the husband’s child-support obligation at $4,000 a month.
The wife also argues that the child-support award must be reversed because the record clearly indicates that the trial court considered the parties’ mediation agreement in determining the husband’s child-support obligation. Indeed, the record indicates that, as the trial-court judge issued its ruling from the bench at the end of the second ore tenus hearing, the trial-court judge stated that the husband’s child-support obligation would be $4,000 and then stated, immediately thereafter, “ya’ll agreed to that.” There is no indication in the record that the parties agreed to an amount of child support other than in the mediation agreement that was attached to the husband’s motion to enforce the mediation agreement. See note 6, supra. Rule 11, Ala. Civ.Ct. Med. R., states that, except for certain exceptions not applicable in the present case, “a court shall neither inquire into nor receive information about the positions of the parties taken in mediation proceedings .... ” Rule 11(c). Thus, to the extent that the trial court relied on the parties’ mediation agreement to determine the husband’s child-support obligation, we conclude that such reliance was error. However, as noted above, this court may reverse the judgment of the trial court only if the error committed by the trial court “probably injuriously affected substantial rights” of the wife. See Rule 45. After considering the record and the scant evidence presents ed regarding the reasonable and necessary needs of the children, we cannot conclude that the trial court’s judgment ordering the husband to pay child support in the amount of $4,000 a month is so unsupported by the evidence as to be plainly or palpably wrong. Thus, we conclude that the error committed by the trial court was harmless because the trial court’s judgment was otherwise supported by the evidence presented by the parties at trial.
III. Child-Support Arrearage
Next, the wife argues that there was no evidence to support the trial court’s determination that the husband’s child-support arrearage totaled $100,000. “ ‘[T]he determination of a child-support arrearage is within the sound discretion of the trial court, and absent a showing of an abuse of discretion the trial court’s judgment will not be reversed.’ ” Hall v. Hall, 998 So.2d 1072, 1076 (Ala.Civ.App.2008) (quoting Hayes v. Hayes, 949 So.2d 150, 152 (Ala.Civ.App.2006)). Moreover, the wife, as “[t]he party alleging that a child-support arrearage exists[,] has the burden of establishing the existence and the amount of that arrearage.” Id. (citing Tanana v. Alexander, 404 So.2d 61, 63 (Ala. Civ.App.1981)).
The record indicates that the existence of an arrearage was undisputed; however, the amount of that arrearage was disputed. The wife argues that the trial court’s determination is unsupported by the evidence and that the trial court could not have relied on the husband’s testimony regarding his determination of his child-support arrearage because the husband’s testimony consisted of estimations while *536 her testimony consisted of a summary exhibit that extrapolated figures from the husband’s income-tax returns and other financial documents. In essence, she argues that this court should reweigh the disputed evidence presented regarding the amount of the husband’s child-support ar-rearage because, she contends, her figures were more reliable. However, this court has held:
“ ‘It was within the province of the trial court to consider the credibility of the witnesses, to draw reasonable inferences from their testimony and from the documentary evidence introduced at trial, and to assign such weight to various aspects of the evidence as it reasonably may have deemed appropriate .... In order to reverse the trial court ..., we would have to make our own credibility determinations and we would have to reweigh the evidence, neither of which we are allowed to do.’ ”
Vestlake Cmtys. Prop. Owners’ Ass’n v. Moon, 86 So.3d 359, 367 (Ala.Civ.App. 2011) (quoting Miller v. Associated Gulf Land Corp., 941 So.2d 982, 990 (Ala.Civ. App.2005)).
Furthermore, our review of the summary exhibit presented by the wife reveals certain unexplained errors, in addition to the error revealed during trial (see note 5, supra), in the wife’s calculation of the husband’s child-support arrearage. For example, the husband’s gross income as stated by the wife in each applicable year does not directly correlate to the amount of gross income set forth in the husband’s income-tax returns. Moreover, the trial court could have concluded that the wife’s calculation of the amount of the husband’s net commissions — specifically, her method of apportioning the taxes paid by the husband — was not an accurate reflection of the amount of taxes the husband paid on his commissions, which are generally taxed at higher rate than his base salary. Suffice it to say, the trial court had reasons not to accept the wife’s summary exhibit of the husband’s child-support arrearage in its entirety.
In his brief on appeal, the husband contends that the trial court’s determination of his arrearage is correct because he testified that he owed net commissions in 2007 equal to $60,000 and that the record indicated that he had erroneously counted $39,500 he had given to the wife in 2006 as a child-support payment. Thus, the trial court could have concluded that the husband owed the wife $99,500, or approximately $100,000, as a child-support ar-rearage. However, if the trial court had accepted the husband’s testimony as true in its entirety, then the trial court would have determined that the husband’s child-support arrearage totaled only $22,000.[11] If the trial court considered the evidence indicating that $39,500 of the child-support payments made to the wife in 2006 was actually related to the repayment of a loan, then the trial court would have concluded, based on the husband’s testimony, that the husband’s child-support arrearage was $1,500 in 2006 and $60,000 in 2007, for a total of $61,500.[12] Thus, it is clear from our review of the record that the trial court accepted neither the husband’s nor the wife’s testimony and/or evidentiary materials in their entirety.
*537 What is not clear from the record is what part of the husband’s or the wife’s testimony the trial court relied on to reach its conclusion. Furthermore, there is no indication in the record whether the trial court applied the husband’s request to modify his child-support obligation retroactively.[13] In summary, this court is unable to determine how the trial court determined the amount of the husband’s child-support arrearage. Generally, in cases in which this court is unable to determine from the record on appeal how the trial court arrived at its child-support-ar-rearage award, we reverse the trial court’s judgment and remand the cause for further proceedings. See Mullins v. Sellers, 58 So.3d 817, 823 (Ala.Civ.App.2010) (citing Hildesheim v. Velaski, 769 So.2d 920, 923 (Ala.Civ.App.1999)) (in both Mullins and Hildesheim, this court reversed the trial court’s determination of a child-support ar-rearage and remanded the case for recalculation of the child-support arrearage “when we were unable, after a review of the evidence, to determine ‘how the trial court reached its total when it calculated that arrearage,’” 58 So.3d at 823). Accordingly, based on our holdings in Mullins and Hildesheim, we reverse the trial court’s determination of the husband’s child-support arrearage and remand the cause for further proceedings.
IV. Interest on the Child-Support Arrearage
Finally, the wife argues that the trial court erred by failing to award her interest on the husband’s child-support ar-rearage. The record indicates that the trial court determined that the parties’ legal-separation agreement was ambiguous because it did not state when the husband’s payments based on his commissions and bonuses were due to the wife and, thus, that it was unable to determine how to calculate the interest due on the child-support arrearage. The wife contends that, following the trial court’s reasoning, the husband would have never owed her an arrearage based on the payments owed on commissions and bonuses because the legal-separation agreement does not contain a due date for those payments — a conclusion that surely cannot be true considering that the trial court determined that the husband owed a child-support arrearage based on his failure to pay the wife 50% of his net commissions and bonuses per the separation agreement. The wife does not challenge the trial court’s determination that the legal-separation agreement, insofar as it requires the husband to pay the wife “50% of the net after tax income of any commission or bonus in excess of his base salary,” is ambiguous to the extent that it does not indicate when such a payments are due. She argues that the trial court could have interpreted the provision of the legal-separation agreement obligating the husband to “supply the necessary W-2’s or 1099’s at the end of each year as proof of compliance” in conjunction with the provision of the agreement obligating the husband to pay 50% of his net commissions and bonuses to the wife as child support in order to determine a due date.
The husband contends that, because unpaid child-support judgments bear interest from the date each child-support installment is due, and because it is unclear when each child-support installment at issue was due, it was impossible for the trial court to determine how to calculate the interest due on the husband’s unpaid child-support obligation. Although we agree that the provision of the legal-sepa *538 ration agreement regarding the payment of commissions and bonuses as child support is ambiguous, i.e., susceptible to more than one meaning, see Dillard’s, Inc. v. Gallups, 58 So.3d 196, 201 (Ala.Civ.App. 2010) (quoting Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala. 2000)), we cannot agree that the husband did not owe interest on any child-support arrearage that may have been due simply because the due date of his agreed-upon child-support obligation was not plain on the face of the agreement. The requirement that a trial court award interest on unpaid child-support obligations is one of the more well-settled principles of family law. See Corwin v. Corwin, 29 So.3d 913, 914 (Ala.Civ.App.2009) (trial court erred by failing to compute the amount of post-judgment interest due on the father’s child-support arrearage); T.L.D. v. C.G., 849 So.2d 200, 204 (Ala.Civ.App.2002) (“By failing to award postjudgment interest on the child-support arrearage, the trial court erroneously applied the law to the facts.”); and Walker v. Walker, 828 So.2d 943, 945 (Ala.Civ.App.2002) (“[A] trial court with jurisdiction over proceedings to enforce an earlier child-support judgment is without authority to waive the imposition of statutorily imposed postjudgment interest upon such payments.”). Thus, once the trial court determined that a child-support ar-rearage was due, it was without authority to waive payment of statutorily imposed interest on the unpaid installments of child support. Corwin, 29 So.3d at 914.
We understand the trial court’s reluctance to insert a due date into an ambiguous agreement. However, once the trial court determined that the terms of the agreement were ambiguous, the trial court then had a duty to “ ‘use established rules of contract construction to resolve the ambiguity.’ ” Dillard’s, Inc. v. , 58 So.3d at 201 (quoting Homes of Legend, Inc. v. McCollough, 776 So.2d at 746). Accordingly, because well-established law holds that a trial court may not waive imposition of interest on past-due installments of child support, we reverse the trial court’s judgment insofar as it determined that interest was not due on any unpaid installments of child support. On remand, we instruct the trial court to apply the rules of contract construction to determine when the commission and bonus payments were due. After the trial court determines the amount of the husband’s child-support arrearage, we instruct the trial court to apply the statutorily mandated interest to each unpaid installment of child support.

Conclusion

The trial court’s judgment is affirmed insofar as it awarded the husband joint legal custody of the children and ordered him to pay child support in the amount of $4,000 a month. We reverse the trial court’s judgment insofar as it determined the husband’s child-support arrearage, and, in addition, we reverse the judgment insofar as it held that the legal-separation agreement was ambiguous and that, thus, no interest on past-due installments of child support would be due. This cause is remanded to the trial court for further proceedings consistent with this opinion.
The wife’s request for an attorney-fee award on appeal is denied.
APPLICATION FOR REHEARING GRANTED; OPINION OF FEBRUARY 3, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, with writing.

. The record indicates that the husband began paying the wife $4,000 a month in child support after the parties attended mediation.

. The record indicates that the husband agreed that he had erroneously included a payment of approximately $4,000 for health insurance for one of the children as part of his child-support obligation, which accounts for the differences in the amount the husband testified he had paid the wife, and which the wife agreed he had paid during the August 2009 hearing, and the amount the wife testified that she had been paid during the October 2009 hearing.

.The wife submitted into evidence an e-mail from the husband dated April 6, 2006, that confirmed that the husband had paid the wife $39,500 as a "payback loan” from the parties’ joint tithe.

. For example, if the husband’s gross commissions equaled half of his gross income, she took half of the total amount of taxes the husband paid and subtracted that from the gross commissions to determine the husband’s net commissions.

. During the hearing, the wife realized that her calculations contained an error, and she later clarified to the trial court that she was requesting only $170,683.52 in child-support arrearages.

. The record indicates that the trial court became privy to the parties' mediation agreement when the husband filed a motion to enforce the agreement, with the agreement attached, in June 2009; the trial court denied the motion. However, as noted above, the wife’s testimony clearly indicated that she had agreed to allow the husband to exercise joint legal custody during the mediation proceedings and that she had changed her mind shortly thereafter because of the husband’s behavior.

. In her application for rehearing, the wife argues that this appeal does not proceed from an original divorce action. We disagree. This case was instituted by the husband when he filed a divorce complaint. Although the husband subsequently styled his amended complaint as a petition to modify the legal-separation judgment, the styling of his amended complaint did not change the nature of the proceeding. The trial court subsequently entered an order divorcing the parties but reserving the issues of custody, visitation, and support. Thus, that order was not a final judgment because it did not resolve each issue pending before the trial court. See Blankenship v. Blankenship, 963 So.2d 112, 114 (Ala. Civ.App.2007). A final judgment divorcing the parties was not entered until the trial court had addressed each issue pending before it, including the custody, visitation, and support issues.

. Consideration of the temporary nature of legal separations is especially important in cases such as this, in which the combined gross income of the parties exceeds the uppermost limit of the schedule of child support found in the appendix to Rule 32, Ala. R. Jud. Admin., and the amount of child support the noncustodial parent must pay is, thus, a discretionary matter. See Rule 32(C)(1), Ala. R. Jud. Admin.

. In Lockridge v. Lockridge, 77 So.3d 148 (Ala. Civ.App.2011), the trial court entered a judgment that modified certain terms of an existing separation agreement instead of entering a judgment divorcing the parties, as requested by the husband in that case. We reversed the trial court’s judgment and remanded the cause with instructions to the trial court to enter a judgment divorcing the parties. In that case, the husband also argued on appeal that the trial court had erred by failing to modify his child-support obligation because there had been several material changes in his and the wife's circumstances since the entry of the judgment adopting the parties' legal-separation agreement. We reversed the trial court’s judgment, insofar as it failed to modify the terms of the husband's child-support obligation, because the trial court had erroneously considered funds in the husband’s retirement accounts in determining that his child-support obligation was not due to be modified. To the extent that our opinion in Lockridge suggests that parties to a legal-separation agreement, in a subsequent action for a divorce, must prove a material change in circumstances since the entry of the judgment adopting the separation agreement in order to modify the noncustodial parent’s child-support obligation, we conclude that such a suggestion is erroneous and inconsistent with the intent of § 30-2-40.

. For example, in this case, the legal-separation action was assigned case no. DR-06-400, while the divorce action was assigned case no. DR-08-183.

. The husband’s testimony indicated that he had overpaid the wife $38,000 in 2006 and that he owed her $60,000 in 2007.

. If the trial court had concluded that the husband had erroneously included approximately $5,200 (tuition) and $4,000 (insurance) in those calculations as well, the trial court would have concluded that the husband’s child-support arrearage totaled $70,700.

. Our calculations do not account for any credit the trial court may have- applied to the husband’s overpayment of child support from March 2008 through May 2009, when the husband began paying $4,000 a month.